UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                     **MEMORANDUM & ORDER**

   v.                                                   23-CR-8 (WFK)

RAYMOND MINAYA,

           Defendant.

------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 15, 2024, Defendant pled guilty to Counts One and Six of a seven-count Indictment, charging him with Firearms Trafficking Conspiracy, in violation of 18 U.S.C. §§ 933, and Cocaine Base Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Plea Agreement ¶ 1, ECF No. 73; Indictment ¶¶ 1–8, ECF No. 1. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 135 months on each count, to run concurrently, to be followed by 3 years of supervised release with both special and standard conditions of supervision; and payment of a mandatory special assessment of $200.00.

    **I.**    **Background**

Defendant participated in a conspiracy to sell drugs and firearms to an undercover officer. On January 5, 2022, co-defendant David McCann met with an undercover law enforcement officer in Brooklyn, New York, to exchange telephone numbers. Sealed Presentence Investigation Report ("PSR") ¶ 7–8, ECF No. 86. The undercover officer posed as a drug dealer and expressed a desire to purchase firearms from McCann for resale. *Id.* ¶ 7. Approximately two days later, McCann and a co-conspirator sold controlled substances to the undercover officer. *Id.* ¶ 8. Over the next six months, McCann arranged several such meetings where the undercover officer purchased firearms and drugs from McCann, Defendant, and their co-conspirators. *Id.* In March 2022, Defendant began arranging transactions directly with the undercover officer without McCann's help. *Id.* ¶ 10.

In total, Defendant and his co-conspirators sold fifty-five (55) firearms and over 1,000 grams of controlled substances—including cocaine base, fentanyl, oxycodone, and heroine—to the undercover officer. *Id.* ¶ 12–13; Gov't Sent'g Mem. at 1, ECF No. 130. Defendant personally sold twelve firearms, 89.621 grams of cocaine base, and 16.1 grams of fentanyl. Gov't Sent'g Mem. at 1–2. Some of these firearms were semi-automatic and compatible with large capacity magazines; at least two of them had been used in prior shootings involving bodily injury. PSR ¶ 10, 12–13. One gun sold by Defendant had been used by an armed gunman during the August 21, 2021 shooting of a large family gathering in Brooklyn. Gov't Sent'g Mem. at 2. Eight individuals were shot during that incident. *Id.*

*Procedural History*

On January 6, 2023, a grand jury returned a seven-count Indictment against Defendant and his three co-defendants, David McCann, Calvin Tabron and Tajhai Jones. Indictment ¶¶ 1–8. On January 11, 2023, DEA and NYPD agents arrested Defendant. PSR ¶ 15. During the arrest, the agents observed Defendant throw objects out of his window, recovering a handgun and fully loaded magazine outside Defendant's residence. *Id.*; Gov't Sent'g Mem. at 2.

On March 15, 2024, Defendant pled guilty to Counts One and Six of the Indictment, charging him with Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933(a)(3), (b), and Cocaine Base Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C). Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment for Counts One and Six of 151 months or below. *Id.* ¶ 4.

2

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider six different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. *Family and Personal Background*

Defendant was born on May 30, 1996, in Brooklyn, New York. Sealed PSR, ECF No. 86. He has two younger sisters. *Id.* ¶ 61. Defendant and his siblings were raised by both parents, but his father was largely absent. *Id.* ¶ 63. Defendant stated his childhood was "terrible"; his family lived in public housing without beds before moving to a homeless shelter. *Id.* ¶ 62. Although Defendant's family eventually left the homeless shelter, his new neighborhood was dangerous. *Id.* ¶ 64. He witnessed stabbings, shootings, robberies, and police brutality. *Id.* Defendant recalls being beaten up at his neighborhood school, which was surrounded by housing projects that "essentially controlled the school." *Id.* ¶ 65. Defendant states he was "often filled with anger and frustration," growing up, "wishing he could be older to help his mother more." *Id.* ¶ 66. In his late teens, he became involved with street gangs, which led to his first prison terms. *See id.*

Defendant's mother is currently in poor health; she is unemployed and receives disability benefits. *Id.* ¶ 60. His father works in maintenance. *Id.*

Defendant has never been married and has no children. *Id.* ¶ 68. He is currently in a relationship; his partner is aware of his arrest and remains supportive. *Id.* ¶ 69.

#### 2. *Educational and Employment History*

Defendant attended James Madison High School between 2010 and 2013. *Id.* ¶ 80. He stopped attending due to his arrest for a prior state conviction. *Id.* Defendant reports earning his

4

Graduate Equivalency Diploma ("GED") while at the Franklin Correctional Center in Malone, New York. *Id.*

Defendant has no employment history prior to 2020. *Id.* ¶ 82. In 2021, Defendant worked as a stock employee at a 4Corn Foods warehouse and BJ's Wholesale Club. *Id.* ¶ 83–84.

    3.    *Prior Convictions*

Defendant has several prior convictions. In 2013, he was convicted of Robbery in the Third Degree for robbing an individual of their cell phone and punching that person in the face. *Id.* ¶ 50. Also in 2013, Defendant was convicted of Attempted Murder for shooting and injuring someone at a public playground. *Id.* ¶ 51. He was sentenced to seven years in custody and five years' post-release supervision. *Id.* Defendant incurred fifteen disciplinary infractions while in state custody, including assault on an inmate, possessing a weapon and contraband, and violent conduct. *Id.*

In 2015, Defendant was convicted of Conspiracy in the Fourth Degree: Conspire to Perform a Class B or C Felony. *Id.* ¶ 52. While incarcerated on Rikers Island, Defendant had multiple conversations with a co-conspirator during which Defendant reported the location of a rival gang member. *Id.*; Gov't Sent'g Mem. at 3. Defendant and his co-conspirator discussed plans to kill the rival gang member. *Id.*

    4.    *Physical and Mental Health*

Defendant has asthma and uses an inhaler. *Id.* ¶ 74. He has a scar on his forehead from an incident at Five Points Correctional Facility in Romulus, New York, in which correction officers purportedly threw Defendant on the ground for breaking a facility rule. *Id.* ¶ 75.

Defendant has no history of mental or emotional health conditions. *Id.* ¶ 76. Defendant's mother states he was diagnosed with attention deficit hyperactivity disorder ("ADHD") as a child. *Id.*

        5.    *Substance Abuse*

Defendant began smoking marijuana at age fifteen. *Id.* ¶ 78. Prior to his incarceration, Defendant used marijuana every day. *Id.* Defendant completed a mandatory substance abuse treatment program while in state custody. *Id.* He does not consume alcohol. *Id.* ¶ 79.

        6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Over the course of several months, Defendant and his co-conspirators sold over fifty firearms and 1,000 grams of illegal drugs to an undercover officer, introducing scores of unregulated weapons and controlled substances into the community. Defendant personally sold at least twelve of these firearms, 89.621 grams of cocaine base, and 16.1 grams of fentanyl. Government Sentencing Memorandum ("Gov't Sent'g Mem.") at 1, ECF No. 130. Defendant's crimes pose a grave

threat to public safety, especially in New York City, where "guns are tools of the trade and gun violence [is] a routine form of communication" for organized crime syndicates. *United States v. Cavera*, 550 F.3d 180, 204 (2d Cir. 2008) (Raggi, J., concurring). The Court's sentence serves to deter others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the citizens of this district. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933, and one count of attempted Cocaine Base Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Plea Agreement ¶ 1.

For Count One, Defendant faces a maximum term of imprisonment of fifteen years and no minimum term of imprisonment. 18 U.S.C. § 933. Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e).

For Count Six, Defendant faces a maximum term of imprisonment of twenty years and no minimum term of imprisonment. 21 U.S.C. § 841(b)(1)(C). Defendant also faces a statutory term of supervised release of three years. 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3583(e). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e).

Defendant is ineligible for probation on both Counts One and Six. 18 U.S.C. §§ 3561(a)(3); U.S.S.G. §5B1.1(b)(1)–(3).

In addition to facing terms of imprisonment and supervised release, Defendant also faces financial penalties. For Count One, Defendant faces a maximum fine of $250,000.00, or twice the gross gain or twice the gross loss caused by the offense. 18 U.S.C. §§ 3571(b)(3) and (d). For Count Six, Defendant faces a maximum fine of $1,000,000.00. 21 U.S.C. § 841(b)(1)(C). However, Defendant appears unable to pay these fines. Sealed PSR ¶ 87. Finally, the Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A), for a total of $200.00.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Firearms Trafficking Conspiracy

Defendant pled guilty to one count of Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933. Indictment ¶ 1; Plea Agreement ¶ 1. The applicable Guideline for Firearms Trafficking Conspiracy is U.S.S.G. §2K2.1(a)(3). Defendant has a base offense level of 22 under U.S.S.G. §2K2.1(a)(3) because the offense involved a semiautomatic weapon capable of accepting a large capacity magazine and Defendant committed the instant offense after sustaining a felony conviction of a crime of violence or a controlled substance offense.

Under U.S.S.G. §2K2.1(b)(1)(C), six levels are added because the offense involved between 25 and 99 firearms (specifically, 55 firearms). Per U.S.S.G. §2K2.1(b)(4)(B)(i), four levels are added because some of the firearms contained obliterated serial numbers. Three offense

8

levels are subtracted under U.S.S.G. §2K2.1, which prohibits the cumulative offense level from the application of U.S.S.G. §2K2.1(b)(1)–(4) from exceeding 29.

Another four levels are added pursuant to U.S.S.G. §2K2.1(b)(5) because Defendant was involved in the trafficking of firearms to an individual who "intended to use or dispose of the firearms unlawfully." These adjustments result in an adjusted offense level of 33.

Cocaine Base Trafficking Conspiracy

Defendant also pled guilty to one count of Cocaine Base Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C). Indictment ¶ 7. The applicable Guideline for Cocaine Base Trafficking Conspiracy is U.S.S.G. §2D1.1, which calculates the base offense level based on the Drug Quantity Table in §2D1.1(c). Because Defendant is accountable for 2,682.35 kilograms of converted drug weight, he has a base offense level of 30 under U.S.S.G. §§2D1.1(a)(5) and (c)(5). The Government asks the Court to use an offense level of 26 to minimize the powder-to-cocaine base disparity. Gov't Sent'g Mem. at 8 n.4.

Two levels are added under U.S.S.G. §2D1.1(b)(1) because Defendant possessed a firearm while selling narcotics. Adopting the Government's base offense level of 26, this amounts to a total offense level of 28.

Grouping Counts

Multiple counts are grouped if they "involv[e] substantially the same harm." U.S.S.G. §3D1.2. The most serious offense level of the grouped counts is the one used. U.S.S.G. §3D1.3(a). Here, the most serious offense level of the grouped counts is 33.

From this offense level, three levels are subtracted if Defendant timely accepted responsibility under U.S.S.G. §3E1.1(a)–(b). The Government argues Defendant is not entitled to a reduction under U.S.S.G. §3E1.1(a) because he committed crimes and possessed contraband

9

while in custody for the instant offense. Gov't Sent'g Mem. at 9–10. The Government adds it does not intend to move for a one-level reduction under U.S.S.G. §3E1.1(b). Finally, the parties agreed to the one-level reduction for reaching a global resolution under U.S.S.G. §5K2.0.

Probation recommends a sentence of 108 months' imprisonment on each count, to run concurrently to each other; three years of supervised release on each count, to run concurrently to each other; and a $200.00 Special Assessment Fee. Probation Department Sentence Recommendation ("Prob. Sentencing Rec.") at 1, ECF No. 128-1. The Government recommends a sentence of 188 months' imprisonment. Gov't Sent'g Mem. at 1. Defense counsel recommends a below-Guidelines sentence—less than 108 months' imprisonment—and two years' supervised release. Def. Sent'g Mem. at 1. This Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On February 28, 2025, this Court sentenced co-defendant David McCann to 108 months' imprisonment. Judgment, 23-CR-8, ECF No. 108. Defense counsel argues Defendant's conduct was less extensive than McCann's, warranting a lesser sentence. Def. Sent'g Mem. at 5. But

Defendant organized transactions directly with the undercover officer, just as McCann did. And unlike Defendant, McCann had no prior criminal history and worked as a unit orderly at the MDC. *See* Memorandum & Order, ECF No. 107. For these and other reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the sixth § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is inapplicable in this case.

### IV. Conclusion

For the reasons set forth above, the Court sentences Defendant to 135 months of custody, to run concurrently; 3 years of supervised release with both the standard and special conditions of supervised release; and the mandatory $200.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2025
Brooklyn, New York

11